# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**BRIDGER STEEL, INC.,**<br><br>      Debtor. | Case No. **2:23-bk-20019-BPH** |
| **RICHARD J. SAMSON, AS CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF BRIDGER STEEL, INC.,**<br><br>      Plaintiff,<br>v.<br><br>**THE LCF GROUP, INC.,**<br><br>      Defendant. | Adv. No. **2:24-ap-2003-BPH** |

## MEMORANDUM OF DECISION

**I.    Introduction**

      In this adversary proceeding, The LCF Group, Inc. f/k/a Last Chance Funding, Inc., ("Defendant") seeks to compel arbitration of some or all the causes of action asserted by the Chapter 7 Trustee ("Trustee") in the complaint, pursuant to an arbitration provision included in the Merchant Agreement, ("Contract") entered by Defendant and Debtor, Bridger Steel, Inc.[1] For the reasons stated below, the Court denies the motion.

**II.    Jurisdiction and Venue**

      Allowance or disallowance of claims against the estate and estimation of claims are a core proceeding of bankruptcy under 28 U.S.C. § 157(b)(2)(B). Pursuant to 28 U.S.C. § 157(b)(1), the bankruptcy court may hear, determine, and enter final orders and judgments in core proceedings. *Dunmore v. United States*, 358 F.3d 1107, 1114 (9th Cir. 2004).

      A proceeding to determine the avoidance and recovery of a preferential transfer is also core. 28 U.S.C. § 157(b)(2)(F).

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

1

Venue is proper in the district where the underlying case is pending. 28 U.S.C. §§1391(b),1409(a). The underlying case is pending before this Court.[2]

### III. Background

The Debtor filed its petition under chapter 11 of the Bankruptcy Code ("Code"). Defendant received notice of the case filing and filed a proof of claim in the approximate amount of $549,000.[3] Defendant's Claim included a copy of the underlying Contract between Debtor and Defendant.[4] It included the following clause:

> Arbitration. Notwithstanding the foregoing, any dispute, claim or controversy arising out of or relating to this agreement, the security agreement or the guaranty(s) herein, or the breach of any of the said agreement, security agreement or the guaranty(s) shall be, at the election of either party, settled by arbitration administered by Mediation and Civil Arbitration, Inc. d/b/a RapidRuling (www.rapidruling.com) in accordance with its Commercial Arbitration Rules effective at the time a claim is made, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.[5]

To date, approximately 250 claims have been filed in the Case. The case was converted to one under chapter 7 and a trustee was appointed. Following conversion, the Trustee reviewed the claims register and commenced this adversary proceeding.[6]

The Complaint in this proceeding constitutes an objection to the Claim and generally seeks: (a) disallowance of the Claim; (b) avoidance of Defendant's lien and recovery of alleged preferential payments; (c) a declaratory ruling that the transaction was a loan with a usurious interest rate and imposition of Montana's statutory penalty for violating its usury statute; and, (d) other relief including pre- and post-judgment interest and attorneys' fees.

Defendant responded to the Complaint with a Motion to Compel Arbitration.[7] Trustee filed a Response on June 5, 2024.[8] A hearing on the Motion was held on July 1, 2024. Appearances were noted for the record. No exhibits or testimony were introduced.

---

[2] *In re Bridger Steel, Inc.*, Case No. 2:23-bk-20019-BPH ("Case").

[3] Claim No. 237-1 ("Claim") in Case.

[4] *Id.,* Ex. 1 at p. 6.

[5] *Id.*

[6] ECF No. 1 ("Complaint").

[7] ECF Nos. 5 and 6 (collectively, "Motion"),

[8] ECF No. 7 ("Response").

### IV. Parties' Positions

The Complaint includes 5 counts:

(1) Declaratory Judgment – Choice of Law (Montana);
(2) Declaratory Judgment – Contract is a Loan Transaction;
(3) Avoidance and Recovery of Preferential Transfers;
(4) Usury; and
(5) Disallowance of Proof of Claim.

The Complaint alleges that, although the Contract attached to the Claim identifies the transaction as a "Merchant Agreement," in substance it is a loan under Montana law. This overarching theory forms the basis of the Trustee's objection to the Claim.

To prevail under his theory, the Trustee must establish that: Montana law is applicable; the transaction was a loan; the loan was usurious; and imposition of a statutory penalty is mandated under Montana law. Additionally, the Trustee seeks to recover for the benefit of the estate "preferential transfers" (i.e., payments) Defendant received pursuant to §§ 547, 550.

The Motion argues Trustee must arbitrate some—or possibly all—the issues raised in the Complaint. First, Defendant contends the Trustee is bound by the same terms under the Contract as Debtor and seeks to compel arbitration of what it characterizes as Trustee's noncore claims arising out of the Contract (choice of Law, contract is a loan, and usury) pursuant to the Federal Arbitration Action ("FAA"). Further, in the interest of judicial economy, it urges the Court to either stay resolution of the core claims (Preferential Transfer and Disallowance) pending completion of the arbitration or compel arbitration of all claims.

Trustee contends that the preferential transfer claim is non-arbitrable because Trustee is bringing it on behalf of creditors, not Debtor, and the creditors did not sign the Contract. Further, Trustee contends that counts 1, 2, and 4 are components of the claim objection; which, if successful, will eliminate one creditor's right to share in any distributions by the estate, and result in a greater recovery for the remaining creditors. As a result, Trustee asserts that the Court should exercise its discretion and deny the Motion because arbitration conflicts with the underlying purposes of the Code.[9]

### V. Applicable Law and Analysis.

The intersection of arbitration and bankruptcy "presents a conflict of near polar extremes[.] [B]ankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach towards dispute resolution." *U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc.* (*In re United States Lines, Inc.*), 197 F.3d 631, 640 (2d Cir.1999) (quoting *Societe Nationale Algerienne Pour La Recherche, etc. v. Distrigas Corp.*, 80 B.R. 606, 610 (Bankr. Mass. 1987)). When called upon to consider whether a dispute in bankruptcy should be arbitrated consistent with any prepetition arbitration agreement a party entered, courts must "weigh the competing bankruptcy and arbitration interests at stake" *In re*

---

[9] Trustee additionally argues that the arbitration agreement is invalid under Montana law.

*EPD Inv. Co., LLC*, 821 F.3d 1146, 1150 (9th Cir. 2016). Although different rationales have been developed for reaching one conclusion or another regarding enforcement, most Courts of Appeal begin their analysis with *Shearson/Am. Express v. McMahon*, which stated:

> The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from [the statute's] text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes.

482 U.S. 220, 226–27 (1987) (citations omitted). Many courts have concluded that there is nothing explicit in either the Code's text or legislative history that would establish a broad exception for enforcement of arbitration agreements in bankruptcy. *See Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1161 (3d Cir. 1989); *MCI Telecomm. Corp. v. Gurga (In re Gurga)*, 176 B.R. 196, 200 (9th Cir. 1994); *N. Parent*, 221 B.R. 609, 621 (Bankr. Mass. 1998). Instead, courts that have denied enforcement of an arbitration agreement in bankruptcy have concluded enforcement of the prepetition arbitration agreement would conflict with the Code's underlying purposes. *See Whiting-Turner Contracting Co. v. Elec. Mach. Enters. (In re Elec. Mach. Enters.)*, 479 F.3d 791, 796–97 (11th Cir. 2007); *Ackerman v. Eber (In re Eber)*, 587 F.3d 1123, 1129 (9th Cir. 2012).

When considering whether an arbitration agreement should be enforced in bankruptcy, courts have considered whether the subject dispute is core or noncore. *See Anderson v. Credit One Bank, N.A. (In re Anderson)*, 884 F.3d 382, 387–88 (2d Cir. 2018). When doing so, consideration is given to whether the party against whom the arbitration will be enforced is the debtor or trustee. *See Whose Dog R U Prods. v. Wolkowitz (In re Orchid Child Prods., LLC)*, No. 2:20-bl-21080-RK; Adv. No. 2:21-ap-01212-RK, 2024 Bankr. LEXIS 975, at *41–42 (Bankr. C.D. Cal Apr. 22, 2024) (considering bankruptcy specific issues of arbitration for a trustee, such as diminution of the estate). And, in the case of a trustee, whether the trustee is acting independently on behalf of the estate or standing in the shoes of the debtor by asserting a derivative right. *Kittay v. Landegger (In re Hagerstown Fiber Ltd. P'ship)*, 277 B.R. 181, 206–07 (Bankr. S.D.N.Y. 2002). The analysis begins with consideration of the underlying agreement.

### A. Validity and Scope of the Arbitration Agreement

In this Circuit, the court's role when considering whether to enforce an arbitration agreement has been distilled into two limited inquiries: (i) whether a valid arbitration agreement exists and (ii) whether the agreement encompasses the disputes at issue. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). When considering whether a valid arbitration exists, federal courts apply state law principles that govern the formation of contracts. *Id*. This inquiry requires this Court to make distinctions between the Debtor, who entered the Contract, and the Trustee—with whom there is no binding agreement.

The parties dispute whether New York or Montana law shall apply. The Court does not wish to decide that issue now because the resolution of the choice of law issue will have a significant impact on the parties' other disputes. At a minimum, it is uncontested there is no

arbitration agreement between the Trustee and Defendant. As a result, Defendant must establish that it has a valid agreement with the Debtor, and that agreement is enforceable against the Trustee, (i.e., the Trustee is asserting a derivative right of the Debtor). No one disputes Debtor and Defendant entered an arbitration agreement. Solely for purposes of the immediate analysis, the Court assumes the agreement between Debtor and Defendant is valid.

Defendant relies on *Garamendi v. Caldwell*, No. CV-91-5912-RSWL (EEX), 1992 WL 203827, at *3 (C.D. Cal. 1994) (citing *Hays*) for the proposition that the Trustee is bound by the debtor's pre-petition agreement to arbitrate. But this broad conclusion is at odds with the more narrow and explicit holding of *Hays*. The *Hays* Court held, "that the trustee is bound to arbitrate all of its claims that are derived from the rights of the debtor under section 541." 885 F.2d at 1154. In its decision, the *Hays* Court explicitly acknowledged the important distinctions to be drawn between, "causes of action unique to the trustee under the Bankruptcy Act and not derivative of the bankrupt." *Id.* at 1155.

This distinction between causes of action unique to the trustee under the Code and not derivative of the bankrupt is important because only the parties to an arbitration agreement are bound by it. *In re EPD Inv. Co.*, 821 F.3d at 1152 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985)). Avoidance actions are not derivative of debtor's rights and not subject to arbitration. As one court explained:

> Claims that are derivative of a debtor's rights may be subject to arbitration. Claims that belong exclusively to a trustee or debtor in possession belong to creditors who were not parties to the arbitration agreement and, therefore, are not subject to arbitration. Decisions post-dating *Allegaert* make this distinction very clear. Defendants have failed to find any reported decisions supporting their argument that statutory avoidance claims are subject to arbitration.

*Bethlehem Steel Corp. v. Moran Towing Corp. (In re Bethlehem Steel Corp.)*, 390 B.R. 784, 791–92 (Bankr. S.D.N.Y. 2008) (holding preferential transfer claims pursuant to 11 U.S.C. § 547 are non-arbitrable).

The preference claim is exclusive to the Trustee. It is being asserted by the Trustee on behalf of the estate. According to the Complaint, Trustee seeks to compel the return of alleged preferential transfers made by Debtor to Defendant pursuant to §§ 547(b),550. There is no arbitration agreement between Defendant and the Trustee, and Trustee's right to recover payments under § 547(b) is not derivative of Debtor's rights. Defendant has not identified a legal or factual basis upon which to compel the arbitration of the §§ 547(b), 550 claim.

The remaining causes of action are components of the Trustee's Claim objection pursuant to § 502(b)(1). The trustee is the representative of the estate. § 323(a). In this role, the chapter 7 trustee represents the interests of all unsecured creditors, not a subset of creditors or an individual creditor. *Hirschfeld v. McKinley*, 78 F.2d 124, 135 (9th Cir.1935). In a chapter 7 case, the trustee must examine proofs of claims and object to the allowance of any claim that is improper. § 704(a)(5). The claims review process ensures only creditors entitled to an equitable distribution receive one. The Claim objection, comprised of the remaining relief sought in the

Complaint, is brought on behalf of the estate pursuant to §§ 502(b)(1), 704(a)(5). It is not derivative of Debtor's rights. As a result, the Trustee is not bound by the arbitration agreement between Debtor and Defendant.

Importantly, a trustee's preference action is "necessarily . . . resolved in the claims allowance process" when a defendant has filed a proof of claim against the estate. *Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency)*, 702 F.3d 553, 563 (9th Cir. 2012) (citing *Stern v. Marshall*, 564 U.S. 462, 488–89 (2011) and *Katchen v. Landy*, 382 U.S. 323 (1966)). Defendant filed its Claim, and this adversary proceeding was commenced by the Trustee seeking to disallow the Claim and recover transfers that are allegedly preferential. Having concluded that the Trustee's action is not derivative of the Debtor's rights and not subject to the arbitration agreement, this Court's analysis could stop here. However, because this Court is cognizant of the "liberal federal policy favoring arbitration," and the applicable analysis ordinarily required, it will further consider whether the matters are core or noncore and if enforcing arbitration would conflict with the Code's purpose.[10]

### B. The core v. non-core distinction and underlying purposes of the Code

#### 1. The labels "core" and "noncore"

Under *Continental Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1001, 1020 (9th Cir. 2012), this Court is required to consider whether counts 1, 2, and 4 in the Complaint are core or noncore, and whether compelling arbitration "would conflict with the underlying purposes of the Code[]" before it can render a final decision on enforceability. *Thorpe*, 671 F.3d at 1020–21 (citing *McMahon*). If the disputes at issue are core proceedings, arbitration may be denied if enforcement conflicts with underlying purposes of the Code. *Thorpe,* 671 F.3d at 1021. Conversely, existing case law weighs in favor of compelling arbitration if the disputes involve noncore proceedings. *Id.*

Defendant characterizes counts 1, 2, and 4 as "non-core." Ordinarily, noncore matters are issues "related to" bankruptcy. *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1435 (9th Cir. 1995). While there is no exact definition of noncore proceedings, examples include state law slander of title, quiet title, and breach of contract claims. *People Who Care Youth Ctr., Inc. Ammec, Inc. (In re People Who Care Youth Ctr., Inc.)*, No. 2:18-bk-10290-RK; Adv. No. 2:18-ap-01139-RK, 2023 Bankr. LEXIS 2491, at *7 (Bankr. C.D. Cal. Sept. 26, 2023); *Horowitz v. Sulla (In re Horowtiz)*, No. 16-00239, Adv. No. 16-90015, 2016 Bankr. LEXIS 2536, at *5, *18 (Bankr. Haw. July 8, 2016); *MCI Telecomm. Corp. v. Gurga (In re Gurga)*, 176 B.R. 196, 199 (B.A.P. 9th Cir. 1994). However, context matters because an issue that might be noncore when considered in isolation may become core when considered in its procedural and statutory context.

A core proceeding is one that invokes a substantive right created by federal bankruptcy law or a proceeding that could not exist outside of bankruptcy. *Eastport Assocs. v. City of L.A. (In re Eastport Assocs.)*, 935 F.2d 1071, 1076 (9th Cir. 1991). 28 U.S.C. § 157(b)(2) outlines a

---

[10] *See Walsh v. Ariz. Logistics, Inc.*, 998 F.3d 393, 396 (9th Cir. 2021) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

non-exclusive list of core proceedings. A core proceeding is one arising under or arising in a case under chapter 11. *Vitamins Online, Inc. v. Heartwise, Inc. (In re Heartwise, Inc.)*, No. 22-60060, 2024 U.S. App. LEXIS 14956, at *2–3 (9th Cir. June 20, 2024). Claim allowance is a core proceeding. 28 U.S.C. § 157(b)(2)(B). Recognition that the claim allowance process is core is important here because Defendants have urged this Court to conclude issues anchored in state law such as usury are noncore, without any discussion of the context in which those issues are being considered. In a vacuum, and under different circumstances Defendant's characterization of usury and other issues as noncore might be correct. However, in this case, such a conclusion is incorrect.

"[I]n cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law . . . but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court . . . exercises *exclusive* control" *Katchen,* 382 U.S. at 335 (emphasis added) (quoting *Barton v. Barbour*, 104 U.S. 126, 134 (1881). "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law." 28 U.S.C. § 157(b)(3). In the context of claim allowance, the validity of a creditor's claim is determined by state law. *Cossu v. Jefferson Pilot Sec. Corp. (In re Cossu)*, 410 F.3d 591, 595 (9th Cir. 2005) (quoting *Grogan v. Garner*, 498 U.S. 279, 283–84 (2005)). The "'basic federal rule' in bankruptcy is that state law governs the substance of claims" and claims are not analyzed differently solely because they are in bankruptcy. *Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 450–51 (2007).

Bankruptcy courts have "authority to decide even state law counterclaims to filed proofs of claim if the counterclaim would necessarily be decided through the claims allowance process." *Deitz v. Ford (In re Deitz)*, 760 F.3d 1038, 1046 (9th Cir. 2014) (citing *Farooqi v. Carroll (In re Carroll)*, 464 B.R. 293, 312 (Bankr. N.D. Tex. 2011) (citing *Stern v. Marshall*, 564 U.S. 462, 499 (2011))). When considering whether to allow a proof of claim, a bankruptcy court must examine the contract itself and the circumstances surrounding its formation, even if those circumstances would otherwise implicate noncore issues such as breach of contract. *Durkin v. Benedor Corp. (In re G.I. Indus)*, 204 F.3d 1276, 1280 (9th Cir. 2000). Because noncore issues are necessarily determined in claim objections, underlying contract claims are "subsumed" into the core proceeding of claim allowance. *Id*. In other words, there can be no dispute that claims filed in bankruptcy and their accompanying noncore issues are within "the bankruptcy court's core jurisdiction." *Vitamins Online, Inc.*, 2024 U.S. App. LEXIS 14956, at *3–4.

Counts 1, 2, and 4, which Defendants argue are noncore, are integral components of count 5, disallowance of Defendant's claim pursuant to § 502(b)(1), as explained above.[11] Defendant's argument that counts 1, 2, and 4, are noncore solely because state law issues are implicated glosses over applicable law in this Circuit. Contrary to Defendant's arguments, count 1, 2, and 4 are components of a claim objection, and along with the other disputes in the Complaint, inextricably tied to a core proceeding—claim allowance.[12]

---

[11] *See supra*, Section V.A.

[12] Defendant's recycling of the very argument that was rejected by the Circuit in *Thorpe* is troubling. More troubling however is the following statement in Defendant's brief suggesting

When Defendant filed its Claim, it elected to share in any distributions of Debtor's property. Doing so triggered the Trustee's statutory duty to review the Claim and object to it on behalf of the estate and other creditors. Filing the Claim also had other consequences. By filing the Claim, Defendants consented to this Courts entry of final orders or judgment. *See Langenkamp v. Culp*, 498 U.S. 42, 44–45 (1990) ("by filing a claim against a bankruptcy estate, a creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power") (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58–59 n. 14 (1989)). Having determined the issues raised in the Complaint are core proceedings, this Court must consider whether enforcing arbitration conflicts with underlying purposes of the Code. If there is conflict, this Court may exercise its discretion and deny the Motion.

### 2. The FAA promotes an individualized dispute resolution process that conflicts with the Code's claims allowance process

#### a. FAA's original purpose and its evolution

The FAA did not include a statement of purpose when it was passed, but the accompanying House report explains the purpose was to, "to make valid and enforceable agreements for arbitration." Jodi Wilson, *How the Supreme Court Thwarted the Purpose of the Federal Arbitration Act*, 63 Case W. Res. L. Rev. 91, 100 (2012) (quoting H.R. Rep. No. 68-96, at 1 (1924)). The legislation was necessary because, historically, arbitration agreements had been the subject of judicial hostility and not enforced.[13] Congress's expectation was that the FAA would place arbitration agreements "upon the same footing as other contracts, where it belongs."[14]

Despite merely wanting to curb judicial hostility to arbitration and place arbitration agreements on equal footing with other contracts, more than 50 years later, the FAA was construed as, "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses*, 460 U.S. at 24 (1983). Over the intervening 50 years, equal footing was

---

*Thorpe* supports the argument:

> Therefore, these three claims – the first, second, and fourth – are non-core claims that must be arbitrated. *See Security Farms*, 124 F.3d at 1008; *Castlerock* 781 F.2d at 162; Thorpe., 671 F.3d at 1021 see *Eber*, 687 F.3d at 1130. (emphasis added)

This statement to the extent it relies on Thorpe cannot be reconciled with the explicit holding in Thorpe, "On all these grounds we hold that the resolution of [Debtor's breach of contract] claim was a core matter in the bankruptcy." *Thorpe*, 671 F.3d at 1022.

[13] Wilson, *supra* at 98–99.

[14] *Id.* at 101

superseded by favoritism and enforcing arbitration was the rule not the exception.[15]

More recently, in *Morgan v. Sundance*, 596 U.S. 411, 418 (2022), the U.S. Supreme Court discouraged favoritism explaining, "[the FAA's goal] is to make 'arbitration agreements as enforceable as other contracts, but no more so.'" 596 U.S. at 418 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n.12 (1967)). *Morgan* similarly held that the FAA acts as "a bar on using custom made rules, to tilt the playing field in favor of (or against) arbitration[,]" including those of waiver. 596 U.S. at 418–19. Courts should treat arbitration provisions as they would any other contract and should not contort themselves to "devise novel rules to favor arbitration over litigation." *Id*. (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218–21 (1985)).

### b. Bankruptcy affords relief to debtors and creditors in a singular forum and proceeding with a goal of equitably distributing debtor's property to those that may be entitled to it

Bankruptcy legislation reflects Congress' intent to afford relief to those struggling financially and on the brink of failure. "Critical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." *Cent. Va. Cmty. College v. Katz*, 546 U.S. 356, 363–364 (2006). The fresh start may follow liquidation or reorganization, and the path to a fresh start varies depending on a debtor's eligibility for relief under different chapters. The hallmarks of bankruptcy have always been prompt and effective administration at low cost. *Katchen,* 382 U.S. 323 at 328.

"The guiding premise of the Bankruptcy Code . . . is the equality of distribution of assets among creditors." *Dorroh v. Wurst (In re Warren)*, No. OR-10-1110-MkHJu, 2011 Bankr. LEXIS 1494, at *15–16 (B.A.P. 9th Cir. 2011) (quoting *Cunard Steamship Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 459 (2d Cir. 1985)). As the Ninth Circuit has explained:

> Bankruptcy law accomplishes equitable distribution through a distinctive form of collective proceeding. This is a unique contribution of the Bankruptcy Code that makes bankruptcy different from a collection of actions by individual creditors. In a world of individual actions, each creditor knows that if he waits too long, the debtor's assets will have been exhausted by the demands of the quicker creditors and he will recover nothing. The creditors race to the courthouse, all demanding immediate payment of their entire debt. Like piranhas, they make short work of the debtor, who might have survived to pay off more of his debts with a little bit of reorganization—or at least might have more equitably fed the slower piranhas.
>
> Federal bankruptcy law seeks to avoid this scenario by creat[ing] a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike.

---

[15] *Id.* at 102–07.

*Sherwood Partners, Inc. v. Lycos, Inc.* 394 F.3d 1198, 1203 (9th Cir. 2005) (citations omitted) (quoting *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 914 (9th Cir. 1996)). In a chapter 7 case, the distribution of the debtor's assets is determined by statute. § 726. This "statutory scheme is a foundational premise of the Bankruptcy Code; it provides the textual basis for the fundamental principle that creditors of equal priority should receive pro rata shares of the debtor's property." *In re Warren*, 2011 Bankr. LEXIS 1494, at *15.

In short, "the bankruptcy estate is a pie, and the bankruptcy process is about dividing up the pie among creditors . . . There is only one pie, and it can be divided up only once." *In re Yellow Corp.*, No. 23-11069 (CTG), 2024 Bankr. LEXIS 745, at *24 (Bankr. Del. Mar. 27, 2024) (quoting Robert M. Lawless, *Reframing Arbitration & Bankruptcy*, 96 Am. Bankr. L.J. 701, 733–34 (2022)).[16] "When there is not enough to go around, the bankruptcy judge must establish priorities and apportion assets among creditors with the same priority, but the starting point is legal entitlements that exist outside of bankruptcy." *In re American Reserve Corp.*, 840 F.2d 487, 489 (7th Cir. 1988). The Code carefully defines the role and duties of the parties and outlines a comprehensive process for allocating and distributing the *res* of the bankruptcy estate amongst competing creditors. It eschews individual action in favor of a collective process.

### c. Consideration of the FAA and Codes' purposes weighs in favor of finding arbitration's individualized piecemeal alternative to a collective claims allowance process impermissibly conflicts with the Code.

Under *Morgan*, a prepetition agreement to arbitrate between a debtor and another party should be treated like other contracts and not benefit from favoritism. In bankruptcy, prepetition contracts are scrutinized and restructured. The Code provides a forum for the restructuring of contractual rights. *Pacifica L 51 LLC v. New Invs. Inc. (In re New Invs., Inc.)*, 840 F.3d 1137, 1142 (9th Cir. 2016). The bankruptcy court and the trustee have significant powers to alter the agreements of parties. *See* §§ 365(a),506. The Code contains several mechanisms that suspend debts, obligations, and terms of contracts to permit negotiation between the parties. *See Ad Hoc Comm. of Holders of Trade Claims v. PG&E (In re PG&E Corp.)*, 46 F.4th 1047, 1055, 1057 (9th Cir. 2022); §§ 362(a); 365(a); 502(a); 506; 1126; 1225(b)(1); 1325(b)(1). In liquidation and reorganization post-petition outcomes rarely mirror a creditor's pre-petition contract or expectations.

Defendants argue that, despite having filed a Claim in this case, the Trustee's objection to that claim should be subject to the pre-petition arbitration agreement in whole or in part, even if it results in inefficiencies attributable to "bifurcated proceedings." Defendants rely on *Dean Witter Reynolds, Inc.* for the proposition that the inefficiencies that would flow from arbitration

---

[16] In the quoted passage, Professor Lawless further explains and concludes:

> There can be only one decision maker. If the court says it should be eight pieces or one piece should be bigger than the others, it is literally impossible to divide the pie in another way. The bankruptcy statute and FAA inherently conflict.

Lawless*, supra* at 734.

is no basis upon which to deny enforcement.[17] Closer scrutiny of *Dean Witter Reynolds* demonstrates a more nuanced consideration of the issue by that court than Defendants have suggested. It stated:

> The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is "piecemeal" litigation, *at least absent a countervailing policy manifested in another federal statute*. (emphasis added).[18]

A bifurcated, decentralized, or individualized effort to collect debts by creditors is precisely the arrangement that exists prepetition between debtors and creditors. The Code manifests a countervailing policy alternative. It provides a detailed alternative to a piecemeal approach.

A clear countervailing policy is evident in the text of the Code. "[A] mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code, 11 U.S.C. §§ 101 et seq., demonstrates Congress' intent to create a whole system under federal control." *MSR Exploration.*, 74 F.3d at 914. The "whole system" outlined in the Code operates to provide an organized alternative forum for restructuring creditor-debtor relationships rather than a pre-petition free-for-all. *Moses v. Cashcall, Inc.*, 781 F.3d 63, 72 (4th Cir. 2015) ("disputes over the debtor's assets and obligations in one forum, thus protecting both debtors and creditors from piecemeal litigation and conflicting judgments").

Under Congress's "whole system" the cost and delay associated with individualized piecemeal litigation is substituted for a collective proceeding with rules "employed by the court and the parties to secure the just, speedy, and inexpensive determination of every case and proceeding." Rule 1001. The "whole system," establishes a singular forum in which ordinarily, a singular judge, debtor, trustee, and all of debtor's creditors' rights are modified, adjusted, or altered with a goal of equitable distributions being realized by the creditors, and debtor's receiving a fresh start.

The Code does not contemplate augmenting its "whole system" with separate individualized arbitrations that multiply the proceedings or cost. Inefficiency and higher costs are antithetical to the bankruptcy process and a trustee's duty "to marshal the estate's assets as quickly and efficiently as possible so that creditors' claims may be paid." *Lovering Tubbs Trust v. Hoffman (In re O'Gorman)*, No. 23-60005, 2024 U.S. App. LEXIS 22844, *19–20 (9th Cir. Sept. 9, 2024). The exercise of dividing a limited pie amongst competing claims in an equitable manner does not lend itself to junior individualized adjudications by arbitrators. Instead, under the Code, it is an exercise best completed when everyone participates in a singular collective proceeding.

Under the circumstances here, enforcing arbitration of issues that are core in a separate forum, divorced from the "whole system" on a piecemeal basis, would conflict with the collective claims allowance process set forth in the Code. This Court is not persuaded Congress

---

[17] Defendants cite to 218–221.

[18] *Dean Witter Reynolds*, 470 U.S. at 222.

contemplated a claims allowance process where creditors seek their equitable share of the pie by filing a claim, while preserving their prepetition right to arbitrate an objection to their assertion of that share. In this case, Defendant submitted a Claim. The Trustee objected to it. The facts underlying the Claim and objection are the same and involve the same transaction. The duplication of efforts, cost and inefficiency that would flow from ordering the parties to present some issues to this Court and others to an arbitrator fundamentally conflicts with the text of the Code and the policies underlying it.

## VI. Conclusion

This Court's analysis could have stopped when it concluded the Trustee was not bound by the prepetition arbitration agreement Defendant and Debtor entered. However, considering the briefing and arguments presented by the parties, the Court has endeavored to address the other issues. Despite Defendant's arguments, all the issues framed in the Complaint are core. Additionally, having considered the history and purpose of the FAA along with the Code's text, arbitration represents a piecemeal individualized alternative to the collective claims allowance process favored by the Code. Enforcing arbitration in this case would jeopardize an otherwise efficient and inexpensive claims adjudication process that suits the needs of this case and the parties. An order will be entered separately.

Dated September 30, 2024.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana